IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARC SANDERS,

    Petitioner,                                                     No. CIV S-03-2086 FCD CMK P

    vs.

JOE McGRATH, Warden, et al.,

    Respondents.                             FINDINGS AND RECOMMENDATIONS

/

        Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2000 conviction for being a felon in possession of a handgun and being a felon in possession of ammunition and two felony strike prior convictions and the sentence of twenty-seven years in prison. Petitioner alleges that he was denied effective assistance of counsel and that the trial court committed reversible error by improperly instructing the jury.

///
///
///
///
///

I.      Background[1]

Petitioner was released from prison in August 1998 and placed on parole.  Under the conditions of his parole, petitioner was, among other things, required to inform his parole officer of his residence and not permitted to move without notice and permission; if petitioner planned on sleeping somewhere other than his residence, he had to inform his parole officer; petitioner was not permitted to travel more than fifty miles from his home without permission; and he was not permitted to possesses weapons or ammunition.

In June 1999, petitioner's parole officer had confirmed that petitioner's residence was 6648 Surfside Way in Sacramento, California.  On June 22, 1999, police officers went to 3525 36th Street in Sacramento County while investigating the whereabouts of Avery Johnson.  Petitioner answered the door and informed the officers that Mr. Avery did not live there.  Petitioner informed the officers that his family owned the residence and that he had lived there for the past four years.  Petitioner informed the officers that his name was Marc Sanders.  The officers subsequently informed petitioner's parole officer of their contact with petitioner.  Petitioner's parole officer decided to conduct surveillance to determine if petitioner was residing at the 36th street residence.

The parole officer conducted surveillance.  During the surveillance petitioner was observed standing in front of the residence and entering it.  Officers secured the residence and detained petitioner.  When asked what he was doing there, petitioner responded that the residence belonged to his mother and he was going to cut the grass.  A search of the residence revealed that someone was sleeping in one of the bedrooms.  Officers found a blue duffle bag on the floor of the living room.  Inside were photographs, many depicting petitioner in front of the 36th Street address, at Lake Tahoe, and elsewhere.  Also in the bag were a .45 caliber semi-

---

[1]For a more detailed discussion of the facts, see the opinion of the California Court of Appeal, Third Appellate District in People v. Sanders, No. CO39633 (May 20, 2003), a copy of which is attached to Respondent's Answer as Exhibit D.

automatic handgun, which was loaded with a full clip and a round in the chamber; a pair of men's tennis shoes; a pair of black slippers; boxers; athletic shorts; sanitary napkins; dominos; a toothbrush; a comb; men's and women's cologne; men's deodorant; an orange flyer for a reggae pool party; size 12M sandals; and a music CD.

Inside the closet of the bedroom which was being used, officers found men's and women's clothing and a FUBU jersey. The jersey was in a dry cleaning bag and it appeared to be similar to a garment that petitioner was wearing in some of the photographs in the duffle bag. The dry cleaning bag had a receipt dated June 2, 1999 and the name M. Sanders written on it.

After searching the residence, the parole officer went to the car where petitioner was detained. He observed that petitioner was wearing size 12 shoes. Petitioner informed his parole officer that he did not live at that address and stated that the gun belonged to his cousin who had just been locked up. Petitioner stated that the residence was his mother's house and that he was there to mow the lawn. Petitioner's fingerprints were found on several of the photographs seized and on the orange pool party flyer.

After a trial jury trial, petitioner was convicted of being a felon in possession of a weapon and ammunition. Petitioner challenged his conviction through successive habeas petitions in the California state courts. ( Answer, Exs D-F.)

II.     Standards for Granting Habeas Relief

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. See 28 U.S.C. § 2254(a). Federal habeas corpus relief also is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the

3

facts in light of the evidence presented in the State court proceeding.

See 28 U.S.C. § 2254(d) (referenced herein in as " § 2254(d)" or "AEDPA). See Ramirez v. Castro, 365 F.3d 755, 773-75 (9th Cir.2004) (Ninth Circuit affirmed lower court's grant of habeas relief under 28 U.S.C. § 2254 after determining that petitioner was in custody in violation of his Eighth Amendment rights and that § 2254(d) does not preclude relief); see also Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003) (Supreme Court found relief precluded under § 2254(d) and therefore did not address the merits of petitioner's Eighth Amendment claim). Courts are not required to address the merits of a particular claim, but may simply deny a habeas application on the ground that relief is precluded by 28 U.S.C. § 2254(d). See Lockyer, 538 U.S. at 71 (overruling Van Tran v. Lindsey, 212 F.3d 1143, 1154-55 (9th Cir.2000) in which the Ninth Circuit required district courts to review state court decisions for error before determining whether relief is precluded by § 2254(d)). It is the habeas petitioner's burden to show he is not precluded from obtaining relief by § 2254(d). See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different. As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002). A state court does not apply a rule different from the law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to cite or fails to indicate an awareness of federal law. See Early v. Packer, 537 U.S. 3, 8 (2002).

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the

4

cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. See Avila v. Galaza, 297 F.3d 911, 918 (9th Cir.2002), cert. dismissed, 538 U.S. 919 (2003).  Where the state court fails to give any reasoning whatsoever in support of the denial of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court must perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable. See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.2003).  In other words, the court assumes the state court applied the correct law, and analyzes whether the decision of the state court was based on an objectively unreasonable application of that law.  It is appropriate to look to lower federal court decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law. See Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir.1999).

III.     Arguments and Analysis

    A.     Ineffective Assistance of Counsel (Claims 1 & 2)

        Petitioner claims that his right to a fair trial, arising out of the Sixth Amendment, was compromised by ineffective assistance of counsel. To sustain an ineffective assistance of counsel claim, petitioner must show that (1) counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different.  Strickland v. Washington, 466 U.S. 668, 688 (1984).

        To show that counsel's performance was less than reasonable, petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. See id. at 690.  This court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. See id.   There is a strong presumption that counsel's conduct "was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing

5

Strickland, 466 U.S. at 689).

Petitioner must affirmatively prove prejudice. See Strickland, 466 U.S. at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.; see also Williams v. Taylor, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000). A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

### 1. Failure to Request Jury Instructions

Petitioner claims that his trial counsel was ineffective for not requesting amplifying jury instructions on the meaning of "control" and for not requesting clarifying instructions when the jury asked if they could consider dominion and control in regards to a determination of constructive possession. The California Court of Appeal rejected this claim, noting:

> Defendant has failed to meet his burden of proof regarding the court's initial charge to the jury and its response to the jury's question. With respect to the initial instructions, a reasonably competent attorney acting as a diligent advocate is not required to make nonmeritorious arguments or requests. As we discussed in Parts I and II , the term "control" is not a technical term peculiar to the law and therefore the failure to request further definition by counsel as part of the standard instructions given to the jury did not fall below the standard of competence for an attorney. Moreover, although the definition of a commonly used term may be required if the jury exhibits confusion over the term's meaning, the jury was not confused as to the term "control," so again, there was no legal basis for counsel to request a definition as to that term.

(Answer, Ex. D at 15-16 (internal citations omitted.)  The Court of Appeal's determination was neither contrary to nor an unreasonable application of Strickland.  Petitioner fails to show that his counsel's performance fell below reasonable standards.  Moreover, petitioner cannot show that,

but for counsel's alleged errors with the jury instructions, the results of trial would have been different.

2.  Conflict of Interest

Petitioner next claims that his trial counsel was ineffective because counsel had a conflict of interest. The alleged conflict of interest arose because petitioner's counsel represented John Jingles, whose girlfriend owned the gun which the jury found petitioner had in his possession. Prior to being hired to represent petitioner, Phil Cozens was retained to represent John Wesley Jingles, who was charged as a defendant in a major drug conspiracy case.[2] The gun that petitioner was charged with possessing was registered to Jingles's girlfriend, Chantel Hearne, who gave statements that she purchased the gun for Jingles. Hearne also testified that Jingles had an affair with petitioner's wife while petitioner was in prison. This lead to a number of angry threats being exchanged between petitioner and Jingles. Petitioner advised Cozens of the problems between himself and Jingles.

According to petitioner, he also informed his counsel that Hearne's uncle was a friend of petitioner's mother and was frequently at petitioner's mother's 36th Street house, including the time the gun was found in the duffle bag by petitioner's probation officer. Hearne's uncle also had access to the room where the gun was found in the duffle bag.

The California Court of Appeal rejected petitioner's claim that his counsel was ineffective due to a conflict of interest, noting:

> On appeal Defendant contends trial counsel "failed to act as a competent attorney when he failed to introduce evidence of the ownership history and the chain of custody of the gun. Counsel should have introduced evidence which showed the gun was purchased by Ms. Hearne, given to Mr. Jingles, and then possibly given to Ms. Sanders (who was then living in the house where the gun was found). This crucial evidence would have explained why the gun was in the bag, and also would have shown that [defendant] did not have the right to exercise control over the gun." This argument ignores the theory of the prosecution's case and its evidence.

---

[2] For a more detailed discussion of the facts, see the opinion of the Court of Appeal, attached as Exhibit D to the Answer.

1  Defendant was charged with violating section 12021.1, subdivision (a), on
the theory that he was in constructive possession of the gun, not on the theory that
2  he owned the gun. Therefore, the gun's ownership history was of minimal
relevance in defending against the prosecution's evidence that he was in
3  possession of the gun.
 Moreover, the chain of possession now hypothesized by counsel on appeal
4  is based on unsworn statements and pure speculation and again ignores the
prosecution's evidence. As we have stated, constructive possession is established
5  by evidence the gun was found in a place over which the defendant has general
dominion and control such as his personal effects. Here, the evidence
6  overwhelmingly established that the gun was inside a duffle bag containing many
of defendant's personal effects and he knew the gun was in the bag. As the trial
7  court found, there was nothing to show that the gun was planted in the duffle bag.
Even if the gun was placed in the bag by someone, defendant admitted that he
8  knew the gun was in the bag. Section 12021.1 prohibits a convicted felon from
possession a firearm even momentarily except under very limited circumstances
9  not present here.
 In sum, the evidence clearly established the bag was within defendant's
10 control, he knew it contained the gun, and he did nothing to relieve himself of
possession of the weapon. Accordingly, defendant has failed to show that counsel
11 had an action conflict of interest or that such interest adversely affected counsel's
representation.
12
13 (Answer, Ex. D at 19- 21 (internal citations omitted.)) The state court's rejection of petitioner's

14 claim is not contrary to nor an unreasonable application of governing federal principles. It is

15 clear from the record that petitioner cannot show that but for counsel's alleged conflict of interest,

16 the result of his trial would have been different. See Strickland, 466 U.S. at 697. The evidence

17 clearly shows that the gun was in a duffle bag which was within petitioner's control; further,

18 petitioner admitted that he knew the gun was in the bag and did nothing about it.

19  The court recommends that petitioner's ineffective assistance of counsel claims be

20 denied.

21  B.  Jury Instructional Error

22  Petitioner argues that his right to a fair trial arising under the Due Process clause of

23 the Fourteenth Amendment was compromised by the trial court failing to adequately instruct the

24 jury on the meaning of the terms "control" and "dominion" as an element of constructive

25 possession. Federal habeas courts do not grant relief, as might a state appellate court, simply

26 because a jury instruction may have been deficient. The only question for a federal court is

whether the allegedly ailing instruction by itself so infected the entire proceeding that the resulting conviction violates due process. See Donnelly v. DeChristoforo, 416 U.S. 637, 642-43 (1974). A violation of due process occurs if a trial is fundamentally unfair. See Estelle v. McGuire, 502 U.S. 62, 72-73 (1991).

> The Court of Appeal rejected petitioner's claim of jury instructional error, noting:
>
> Defendant...made no request for further instructions defining control or any other related term. Because he failed to request amplification of the instructions, the trial court had no duty to further instruct the jury.
>    Moreover, because the word "control" is a commonly understood word, the trial court had no sua sponte duty to instruct the jury on its definition.
>    ....
>    Generally the trial court has a sua sponte duty to give amplifying or clarifying instructions "'where the terms used [in an instruction] have technical meaning peculiar to the law." Conversely, '[a] trial court has no sua sponte duty to give amplifying or clarifying instructions...where the terms used in the instructions are 'commonly understood by those familiar with the English language."
>    Defendant cites no authority holding the word "control" has a technical meaning in the law and we are aware of none that so hold. As we discuss [sic], we conclude that it needs no further definition under the circumstances of this case.

(Answer, Ex. D at 8-11.) The Court of Appeal went on to note that even if petitioner's counsel had requested additional clarifying instructions, the trial court would have had no duty to give them. (Id.) The Court of Appeal's determination that there was no error in the jury instructions is not an unreasonable application of nor contrary to federal due process standards. After careful review it is apparent that the allegedly deficient instruction did not so infect the trial that petitioner's resulting conviction is unfair. The court recommends that this claim be denied.

As a final matter, the court notes that petitioner advances a fourth claim in his petition–that he did not waive his right to challenge the instructions given the jury by failing to object at trial. Although respondent did argue waiver on direct appeal, the Court of Appeal decided the jury instruction claim on the merits concluding that "even if counsel had requested this instruction..., the court would have had no duty to give it. (Answer, Ex. D at 11.) Waiver is a procedural default which could have been imposed in this case, but it was not. Accordingly, petitioner's fourth claim is not cognizable in this habeas petition.

9

IV.   Conclusion

In accordance with the above, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, petitioner may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Petitioner is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  December 12, 2006.

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE

10